All rise United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and His Honorable Court. Good afternoon everyone and welcome. The court and bank is in session to hear an argument in one case. As may be observed, the court includes for the first time our newest appointed and confirmed and sworn member Judge Kimberly Moore and also Senior Judge S.J. Plager who as a member of the original panel in this case had the option under the statute to become a part of the in-bank court and has exercised that option, hence we are 13 and not 12 as otherwise would be the case. So we'll now hear argument in Appeal No. 05-3077 Kirkendall v. Department of the Army, Mr. Dupre. Welcome to you and good afternoon. Please proceed. Thank you, Chief Judge Michel and may it please the court. This court should reverse the decision below and hold that the time limits in the Veterans Employment Opportunities Act may be equitably told. This court should further hold that Mr. Kirkendall was wrongfully denied a hearing on his USERRA appeal. I'd like to begin with the tolling issue. In Irwin and Brock, the Supreme Court established a framework for determining when Congress intended statutes involving claims against the government to be equitably told. The court held that absent a clearly expressed contrary intent that such statutes could be told when there is an analogous statute involving claims against a private litigant. In this case, the text, the structure, and the purpose of the VEOA all powerfully compel the conclusion that Congress did not clearly manifest an intent to override the Irwin presumption and to prohibit the availability of equitable tolling in every possible case. Well, if they didn't do it in this situation, what more could they do or say to make it clear? Well, I think for one thing, there could be a clear statement. I don't think that the words in this statute, in particular the 15-day limitation, the in-no-event language, amounts to a clear statement sufficient to indicate congressional intent to prohibit the exercise of equitable tolling. What language would you choose? If in-no-event doesn't work, what language would you choose? I think a statement specifically saying this statute shall not be equitably tolled would be sufficient. There may be other ways of doing it, but I think that language expressly stating no equitable tolling would be a clear statement requirement. How many statutes have language like that in them? I'm not aware of any, Your Honor. I'm not aware of any, but I would point out that in the Bailey v. Glover case, which is the Supreme Court case discussed in our briefs, that statute contained language that I think is indistinguishable from the language in this case. That case involved a statute that said, untimely claims shall not be allowed in any case under this statute. And I would submit, Your Honor, that that language is materially indistinguishable from the in-no-event language at issue here. The government's sole case that they rely upon, I should say the sole case in its project, is the Lampf decision from the Supreme Court. What would be the difference between the language that's used as must be filed within 60 days versus in-no-event may such appeal be brought? For purposes of equitable tolling, I don't think that there's a difference in those two phraseologies. In the Irwin case, the Supreme Court confronted that precise situation where it noted that in the two statutes the Court was discussing, Congress would use slightly different language. And certainly, one of those statutes arguably evinced a greater intent to prohibit tolling. The Supreme Court said we shouldn't read too much into the fact that Congress used different languages. Certainly, the differences did not suffice to evince a different congressional intent with regard to the availability of tolling. Well, they could have used must be filed within 15 days to be parallel to the must be filed within 60 days. Again, I'm not disputing, Your Honor, that they could have phrased it in different ways. But what I am suggesting is that the difference in phraseology I don't think demonstrates an intent with regard to the 15-day deadline to prohibit equitable tolling. The Supreme Court, for instance, in the United States v. Deal case, said just because Congress phrases things in different ways, we shouldn't attach, in all cases, material significance to the fact that they used different language. But isn't it significant the fact that it's differently phrased in the same statute, albeit in two separate sections? Your Honor, I don't think it is. I don't think it is, particularly when you have all the other rockhead factors that cut so powerfully in our favor. I don't think that the in no event language suffices to constitute a clear statement. The government's best case on that issue, Your Honor, is the Lampf decision. But as we pointed out in our brief, Lampf was not decided on the basis of the language in that statute. The Lampf decision turned on the structure of the statute, specifically the two-tier statute of limitations that issued it. I think reading Lampf makes abundantly clear that that decision did not turn on plain language. If it did, it would have been a much shorter discussion. Well, perhaps not, but there were a number of court of appeals cases before Lampf that relied on the in no event language to bar equitable tolling, correct? That's correct, Your Honor, and I think Your Honor was referring to the cases that were cited in the footnote in the government's brief. But I think, without exception, or perhaps with only one exception, every single one of those statutes either involved the Securities Act or a similar and analogous two-tiered statute. The key point here is that it was not the language, but it was the structure. And I think that's abundantly clear from the Lampf decision, because if the Lampf decision had turned on language, there would have been no need for the court to engage in the whole structural issue. In fact, in Lampf, as the court will recall, there were three separate statutes of limitations at issue, only one of which contained the in no event language. And yet the court's conclusion that equitable tolling was unavailable applied universally across those three statutes. And I think that fact alone demonstrates that Lampf is not a plain language decision, as the government would have it, but rather a structural decision. Counsel, so you suggest that the two-tiered nature in Lampf played a predominant role in the Supreme Court's decision making. Well, here in this case, don't we have something akin, though not identical, to the same two-tiered statute in the way of the 61 day before and the 15 day after limitations? You don't just have a single enumeration of no filing more than 15 days after. You have also the detail that you may not file before the 61st day. So here we've set up sort of a before and after. And why isn't that similarly technical and specific the way the Lampf case was? Because I think, Your Honor, with regard to that 60 day limitation, that I would say is analogous to, for instance, a final judgment rule in the district court. In other words, what that 60 day limitation says is simply that you can't jump the gun. You can't go up to the board unless and until DOL has had a chance to act on your complaint. So I think what Your Honor is getting at is that the 60 day and the 15 day could be used two-tiered. But what I would suggest is that that threshold requirement is more analogous to simply getting a final judgment rule or to getting a final order from the district court. It's not this sort of statute of opposed two-tiered structure that we see in Lampf where it's one year from the conduct or one year from the discovery and three years from the conduct. It's a different type of limitation. You rely on the Bailey case from the Supreme Court, 19th century case. As I read that case, correct me if this isn't your interpretation of it, it seemed more of an accrual case than a tolling case. That is, that what the court was dealing with was a statute that said the limitations period will be two years from accrual. And the accrual was deemed to occur after the fraud was discovered or when it was no longer being concealed. Therefore, it didn't seem to me to involve tolling as such. Well, it's a good point, Your Honor. I do think we would beat it as a tolling decision, however. I think what was at issue there, as Your Honor points out, was the fact that certain facts had been concealed from the petitioner. And so certainly I understand Your Honor's point that it could be construed as stating this is the date on which the claim accrued. But I think it's not materially different to read it as we do, that is to say as a tolling decision, which is to say there's no dispute in that case that the statute of limitations had not been complied with, that the petitioner filed well beyond that time. Well, but that depends on when you think the accrual occurs, because the limitations period by its terms was two years from accrual. And therefore, if you say, well, accrual doesn't begin until the concealment ends, then you're within the period. Your Honor, again, I guess I would have a different reading of that decision. I do think that the court really focused on that language and said, can we – they viewed it really as making an exception to the language, which I think is the same inquiry that's contemplated by a tolling inquiry, which is to say you have a time certain in which you must bring a claim, you file out of time, and the question is whether you can forgive the missed deadline. I think that's really what the court was getting at in Bailey, and that's certainly why we read it as a tolling decision, Your Honor. Judge Neumann. Is your perception, having immersed yourself now in this precedent, that there would, in fact, be no circumstance in which equitable tolling would be prohibited unless, in fact, Congress said equitable tolling is prohibited? That is something that bold to try and synthesize all of the different facts and circumstances and equities and all else on which divergent decisions have come before us. So, in other words, is the only way it could accomplish that by virtue of a clear statement? Not just a clear statement of in no event, but a clear statement that there's to be no equitable tolling no matter what the equities. Right. Well, I think Congress could address it in a number of ways, Your Honor. One way, clear statement. Another way is by making structural changes to the statute. For example, if Congress saw fit to grant an exception, as this court has approached the statute of limitations of the Tucker Act, where there are certain specified exceptions, that would be another way that Congress could signal its intent to prohibit equitable tolling. So I think Congress has a number of tools at its disposal. Certainly, the quickest route to the goal and the route it would take if it wants a statute with zero exceptions would be to say equitable tolling shall not be allowed. But, Mr. Dupre, it says in no event. How can you interpret that to say, oh, but there are lots of events that aren't covered by that? Well, again, to answer that question, first by reference to the Bailey case, which we were discussing, which I think uses equally forceful language. It says untimely claims shall not be permitted in any case. And yet the Supreme Court permitted tolling. In the Irwin case, it discussed the statute that originally incited the Soriano decision. But in the Irwin case, it involved a statute that said every claim must be brought within a certain time. So we have seen several Supreme Court cases where you are confronted with language that on its face appears equally mandatory, equally not susceptible to exceptions. And yet in those cases, Irwin, Bailey, the Supreme Court has said not sufficient to preclude equitable tolling. Do you know of any case in which Congress subsequently sought to overturn the effect of a court decision that allowed tolling? And if so, what language did Congress use? To Judge Rochelle, I'm not aware of any case where Congress has done that. I would point out to the court that the Irwin presumption and particularly the gloss that the court placed on it in the Rockham decision is relatively recent vintage. Irwin was the early 90s. Rockham was decided at the end of the 90s. So we're not dealing with a situation where Congress has been legislating light of presumption for decades and decades. It's a relatively new invention. And in Irwin, the court emphasized the importance of predictability in this area of law. It was attempting to synthesize its prior decisions and to really encapsulate how courts should approach these questions. And we would submit that this case is a particularly good candidate for requiring a clear statement on the part of Congress simply because in that situation, courts will know, agencies will know, litigants will know when equitable tolling is allowed or not allowed. Well, with regard to this particular statute, when Congress chose to include the phrase in no event, do we have any clue from the legislative history why they put in that language as opposed to the sentence with those words left out? The legislative history, I don't think, casts light on that specific question, Your Honor. Although I would point out that the legislative history, I think, very powerfully cuts in our favor under the Irwin-Rockham test. Because the legislative history makes explicit that the purpose of the statute, to use Congress's phrase, was to provide a user-friendly system of redress for veterans. This is fundamentally a remedial statute and should be construed as such. Well, it might have been a lot more user-friendly if instead of a 15-day deadline for filing at the board, it had been 15 months. I agree with you completely, Chief Judge Rizzo, although I would point out that I think what Congress, when it was legislating here, it was imagining or anticipating that courts would have the freedom to use their equitable powers to toll the statute in that very rare, very unusual circumstance. I don't think it's plausible to suggest that Congress, given that it has approved tolling in Title VII cases, Social Security cases, Bankruptcy Act cases, would say we're going to stick veterans with this unimaginably harsh, draconian, 15-day, non-waivable time limit, particularly in light of the fact that the government takes the position that the agencies are not required even to notify veterans of the 15-day time limit. Mr. Dupre, do you want to tell us why you think Mr. Kerkendall was entitled to a hearing? I would be delighted to. We believe that Mr. Kerkendall was entitled to a hearing both under the plain language of Section 7701 and in the alternative if the court were to decide that the plain language does not resolve the question by virtue of the board's regulations. Section 7701 clearly reflects a congressional intent, again, assuming that it's not resolved by the plain language of the statute, to allow agencies, in this case the board, to characterize particular proceedings as original proceedings or as appellate proceedings. If it exercises the latter option and chooses to characterize the proceedings following within its appellate jurisdiction, it is obligated to provide a hearing. But it didn't purport to be acting under 7701 when it did that. The authority that cited is USERRA itself, which confers the right to appeal. And under our earlier decision in Lindahl cited by the board, we have held that there can be appeals which go to the board which don't invoke 7701 when some other statute provides for the right of appeal. Isn't it USERRA itself here that provides for the appeal rather than 7701? I don't think so, Judge Dyke. I would submit, again, that regardless of how the board chooses to characterize it or under what authority it purports to be acting, the unequivocal fact in this case is that it has classified these proceedings not as original proceedings but as appellate proceedings. But that was true in Lindahl also. And in Lindahl they said even though it's an appeal, we don't think that 7701 is implicated. Are you familiar with Lindahl? I am, Your Honor. And I would submit that Lindahl did not resolve that question correctly if that was the basis and that is the basis on which the board is claiming that it has the right to do what it did. No, that isn't what Lindahl did. Lindahl did just the opposite. Lindahl said that since Part 1 of the statute didn't mention 7701, then the board was free to pick and choose among the various procedures of 7701. Part 2 of the statute specifically said 7701. So that's really helping us in this case, helping your position in this case. And I think here, this Court has noted repeated times, several times, first in the Sheehan case and then again in the Metzlbaum case, and obviously in this case, that there is an obvious incongruity, to put it mildly, between the board's regulations and its practice. The board, as the Court knows from our briefs, explicitly has characterized USERA proceedings as appeals. It has categorized them within its appellate jurisdiction. But you've referred to regulation. Are you talking about 1208.13? Yes. I'm referring to the provision that says, first of all, we define. 1213, I think, is the one that says no hearing is optional. Yes, may be provided. Right. That is the sole regulation that the government cites for justifying its proceedings here. We would submit that when the board's regulations as a whole are read, it is clear that these proceedings are appeals. And therefore, the board does not have a right to exercise what it claims is its discretion under section 13. But doesn't the specific Governor General and 1208.13 is specific to USERA appeals and it's permissive, not mandatory? But again, our position, Your Honor, is that the board simply does not have the discretion to do that. Our position is that Congress has said to the board, proceedings must be classified in one way or the other. They may be original. They may be appellate. When you classify something as an appeal, it comes with certain rights that flow to the claimant. In this case, a hearing. Once the board has made that decision, that ends the analysis. Because at that point, the right to a hearing becomes a statutory command as distinct from an acting according solely to a regulation. Judge Prost. Well, just as a follow-up to that, I was going to ask what Judge Lurie asked. But when I think you can see it in your brief, you say if they're supposed to defer to the regulation and the board is free to change its regulation. So you can see you agreed in, not that if the board decided that it didn't want this to be considered an appeal and therefore the right to a hearing, it could change its regulation tomorrow to accommodate that. Well, yes, Your Honor. I would point out that that argument, our regulation-based argument, is an alternative argument in the event that this court concludes, contrary to the panel's approach, that the question is not resolved purely through reference to the statute alone. Assuming you disagree with that, yes, exactly. Assuming you disagree with that, our position in that case would be that certainly if the board wants to exercise its discretion to reclassify these proceedings as original proceedings, it would have the freedom to do so. But wouldn't that be true only if under the second step it is a reasonable interpretation of the statute? Well, that's exactly right. That's what I was trying to get at with my first point, to say that if you can't say that Duceyra proceedings are appeals purely by reference to the statute, in other words, if the statute doesn't compel the conclusion that these are appeals per se, then— Then the Chevron second step would still be a question as to the reasonableness of that position. I agree. I agree with that, Your Honor. I agree with that. Mr. Dupree— Pardon? Go ahead. Finish your answer. I would say that certainly it would depend on the exact regulations that the board proposed. I agree completely with that. Now, would you define for us what you mean by a hearing? Are you talking about an evidentiary proceeding with witnesses in the nature of a trial as being the entitlement you think the law gives to such a claimant? Or do you find the hearing requirement as you would see it as being satisfied by an appearance in front of an administrative judge that might be limited to attorney argument in the case of a represented claimant or perhaps statements by a claimant representing himself, but not necessarily the calling of the full set of witnesses of both sides? Well, the ordinary course, I believe, before the board is that many hearings are, in fact, approaching a trial procedure in the sense that you're allowed to call witnesses, cross-examine, put on your case. I don't know that as a matter of statutory interpretation or a constitutional due process that that would necessarily be required in any case, but I do think at a bare minimum it would be an opportunity to appear before the tribunal, before the finer fact, along with the claimant's attorney and representative. But at the end of the day, we would simply ask that the hearing rights afforded to you, Sarah claimants, would be co-expensive with hearing rights afforded to all other appellants proceeding before the board. We would not be asking for special treatment. We would simply be asking to be given the same treatment all other appellants are given before the board. If I may return very quickly, there was one or two additional points that I wanted to just touch on on the Veterans Act point, the equitable polling point. I wanted to emphasize to the court that this case, the veterans statute at issue here, is materially different from a number of other statutes that courts have held are not subject to equitable polling, namely the tax statute at issue in Brockhamp and the Vaccine Act that was at issue in this court's panel decision in Brutts. In both those cases, the court correctly noted that the purpose of those statutory schemes, in large part, was for claim processing, for administrative convenience, to be sure you have claimants. But at the same time, there was a very powerful, compelling government interest in the processing aspect of it. Obviously, in the tax context, the government in Brockhamp introduced evidence that there was something like 90 million tax filings a year, and for that reason, permitting equitable polling would wreak administrative havoc on government officials. This case could not be more different. The government has never asserted that this would pose an immense administrative burden, and I think common sense suggests that it would not. Mr. Dupre? Excuse me. I just want to ask you one question before your time runs out to follow up on the discussion you were having with Judge Bryson. Leaving aside this case, what do you see as a general proposition is the difference between the doctrine of claimant rule and the doctrine of equitable polling? Well, certainly I agree that there is a fair amount of overlap. I think that with regard to equitable polling, it always, or it's almost always, but I think always would arise in the context where a deadline has been missed and someone is coming forward and saying, we have missed this. Claimant rule, to be sure, in some cases, it happens, but again, I think there, the relevant question really focuses on, and I agree it's a tough distinction, a nice distinction, really focuses on when the cause of action technically arose. This case obviously presents a case of tolling, which is a situation where there is not any dispute as to when the claim arose. The question is whether or not a missed deadline can be forgiven in this case. So they're very similar doctrines. I think in this case, we certainly have a case of equitable tolling as opposed to claimant rule. Thank you. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you very much. We'll hear now from the government. Ms. Bleeker, welcome. Good afternoon. Thank you, Your Honor. Please proceed. May it please the Court. Congress has demonstrated through the emphatic language and structure of the VEOA that it did not intend for the 15-day period for appealing to the board to be subject to equitable tolling. Well, how about the language that Mr. Dupre suggests is equivalent in any case versus in no event? He says they have exactly the same degree of force, and the in any case language was held to permit tolling. So why shouldn't the in no event language equally permit tolling? Because here, the in no event language by every court that I'm aware of that's reviewed statutes, primarily the Security Act statutes and statutes similar to that provision, but where the statutes have contained the in no event language, courts have all held that that's not subject to equitable tolling. Based on that language or based on other considerations sometimes referred to as structure? Based on the language and the structure. We agree with Mr. Dupre and Mr. Kuykendall that the Lanth case was based not just on the language but the structure, and we believe that the structure, as Judge Moore discussed, the no sooner than 61 days, no later than 15 days is comparable. It's not the same, because we understand that in Lanth it's talking about two periods of time for bringing one cause of action. And here it's not the same, but it does reflect Congress's intent to provide for a systematic, sequential, time-governed period for a veteran, a preference or eligible veteran, to bring appeals. Why doesn't it just mean Congress wanted to resort first to the administrative process in the relevant agency here, the Department of Labor, just the typical exhaustion of administrative remedies before you go to any sort of a tribunal? Well, it certainly did want that, and it's clear from the statute and the legislative history that what Congress was doing was asking first and foremost that the Secretary investigate and make a determination and attempt to resolve any kind of violation. That's absolutely the intent of it, but then Congress also said that in no event, let me back up, that Congress also said in subsection D that if the Secretary is unable to resolve the matter, the preference-eligible veteran may elect to appeal to the Board, pursuant to the Board's regulations, but in no event may it come sooner than 61 days or later than 15 days. So it wanted that window. It wanted that at least a minimum of 60 days to allow Labor to investigate and to try to resolve the matter, and it wanted a statute of repose, a cutoff date after which the veteran had to come to the Board. Could you apply the Brock Camp factors for us? Here the language doesn't appear to be very detailed or technical or repeated, and certainly there's a lot of legislative history suggesting that the veterans are supposed to receive every benefit under the Act. How does the Brock Camp regime work in your favor? I'm sorry. Brock Camp did consider the emphatic language and structure of the statute that issued there, the tax statute, and it did look to the interrelatedness of the process that was developed, and we believe that here it's sufficient to meet at least a couple of the Brock Camp factors, and as this Court recognized in Bryce, it's not necessary to meet all of the Brock Camp factors. We agree that there's no exception set out for the time limit under Subsection E or even for the time limit to bring a complaint to the Secretary. We also agree that it's not tied with substantive provisions, but it is a sequential time-based process where the limitations period, where various limitations periods are imposed and applied throughout the whole process. Fifteen days is very short. Doesn't that suggest to you that they're in the context of a very veterans-minded statute, that there might be a little bit more leeway within such a tight time frame? Certainly, it's a very short time period, but coupled with the emphatic language and the structure, no, we don't believe that the fact that this is a veterans statute is enough to overcome the express language of the statute, and in fact, that's what the Supreme Court said in Fishgold, that where it noted the doctrine that veterans statutes should be liberally construed, but in that very case, it rejected the veterans arguments because it found it contrary to the express language of the statute. I'm confused about this sequential business that we're talking about. Perhaps you can help me understand it. As I read the statute, there are two 60-day periods and one 15-day period, but the two 60-day periods really aren't limitations. The first one is, that is, you have to file, the statute says, within 60 days from the time of the alleged violation. That's clearly in the nature of a limitation. The second 60-day thing that we're talking about isn't really a limitation at all. All it says, as Judge Michelle, I believe, was pointing to, Chief Judge Michelle, all it says is, hey, you have to be patient for 60 days before you try to take it away from the mediation role that DOL plays. That's all it does. It doesn't take, it doesn't require you to do anything other than just sit quietly for at least 60 days. I agree that it's intended to... So that really isn't a sequential set of hoops that you go through. That simply says, once you get your complaint filed, you've got to wait 60 days before you can do anything else. Right? Do I understand it correctly? I may be confused. No, I agree that it's the 60 days, the waiting the 60 days is intended to give the process a chance to work. But what Congress said in Section D explicitly is that in no event may an appeal to the board be brought sooner than the 61st day. So it's not just a simple wait and be patient, but it's a limitation on when an appeal can be moved from labor to the board. And that it expressly limited the board's ability to promulgate regulations to both no sooner than, no sooner than the 61st day nor any later than the 15th day from the date of notice. One other clarification I'm a little confused about is once it gets to the board, assuming it's gone through the right hoop, what is the issue before the board? Is it what the Department of Labor did or is it what the original agency did? No, it's not what the Department of Labor did. The statute specifically says that the veteran may appeal the violation. So the board has no authority and there's nothing in the VEOA that provides the authority, the board with any authority to review labor's decision including labor's decision whether or not to waive or toll the time limit. So that the board is simply looking anew at the underlying violation. Are you aware of any statutory provisions in which Congress has said no equitable tolling? No. And if there were, if there were a number of them, wouldn't that weaken your position because it's demonstrated that Congress, when it really means it, knows how to say it? If there were, it would, but Mr. Dupree was unable to cite to any cases and I'm not aware of any cases where Congress has, where the courts have required Congress to be that explicit. And in fact, as I've stated before, in Lant and the other cases that construe the Securities Act and similar legislation, the courts have found that the emphatic language and structure of those provisions is sufficient. I'm not aware of any case where a court has said Congress can only rebut the Irwin presumption by saying there is no equitable tolling. What kind of administrative imposition would it be if there was a tolling of the 15 days? Would it be a burden on the MSPB? Not really, not necessarily a burden on the MSPB, but in the Williams case, the board discussed the fact that these cases arise as this one typically in a hiring situation. So the agency has identified a need for personnel and as in this case, they actually selected someone who started the position. And so there is a desire to move the process along so that there isn't this uncertainty hanging over the agency or the individual who innocently was selected based on the agency's determinations. Legislative history doesn't indicate that the Congress specifically focused upon that particular issue when limited to 15 days. No, that's correct. The legislative history talked about, as Mr. Dupree correctly said, the user-friendly, efficient redress system. So there's no indication there that the Congress had any intent of limiting the 15 days specifically because of the employment situation. That's correct. But it is a reasonable interpretation as the board discussed in its case law. I don't understand what the problem is. The person who was hired is performing the duties and encumbering the position, so that if there were equitable tolling for somebody who filed on day 16 at the board, presumably the consequence of a victory in that filing would be something in the nature of some back pay, but not a displacement of the individual to whom the job was awarded. That is correct. So then why does that create a big problem for the government? It doesn't create a big problem for the government, but there is some administrative concern. It's not of the kind that was addressed in Bailey or some of the other tolling cases. Ms. Bleeker, one of the brokerage factors is the subject matter. Yes. In Bailey, we held that time of review provisions can be subject to equitable tolling. The question I have is the fact that it's a time of review provision in any way relevant under the subject matter heading as a factor against equitable tolling. In other words, are time of review provisions less likely to be subject to equitable tolling than provisions dealing with initiation of the proceeding in the first place? For example, the 60-day period here. Yes, Your Honor. I believe the case law is consistent with the fact that time of review provisions are more likely not to be found not to be subject to equitable tolling. And that's reflected in this Court's decision in other cases. Ms. Bleeker, you heard the discussion between Mr. Dupree and Judge Bryson about Bailey v. Glover, that 1874 Supreme Court case. Two questions. One, where do you come down on the issue of whether that case is talking about claim accrual or equitable tolling? And two, what do you see as the difference, as a general proposition, between claim accrual and equitable tolling? I agree with where I think Mr. Dupree came up, that the 19th century Bailey case focused more on accrual than on tolling. And there certainly is a distinction. I could be wrong. I don't want to put words in his mouth. But I think Mr. Dupree thought it was the other way around. All right. I apologize. No, I could be right. But I thought he was wrong. I think that Judge Plegar, perhaps, made the statement, and you may be right that Mr. Dupree disagreed. But regardless, I'm trying to express my opinion and not restate anybody else's. So I think the Bailey case, the old Bailey case, was more focusing on claim accrual. But the decision was actually made based on what I would characterize as the ground for tolling, that a defendant cannot benefit from their own fraud in keeping the individual from knowing that he had a cause of action. And that's a factor, actually, that while there is a difference between claim accrual and equitable tolling, one of the things courts sometimes look at, and Bailey has certainly, I'm sorry, well, Bailey, but especially Irwin, is certainly a case to that effect, that the courts consider whether there's been any fraudulent concealment or any lack of diligence on the part of the party. And they look to, more on point, they look to a provision that runs, whether it runs from the discovery of the violation or from the date of the violation. And here, certainly, the 60-day time period within which to go to DOL runs from the date of the violation. So consistent with tolling cases that have held that because it's running from the date of violation and not the date of knowledge, then that's another indication that Congress may have intended for tolling to apply, because the defendant shouldn't be able to profit from any kind of deception. Thank you. But the provision under subsection D is totally unrelated to either the approval or the time since the violation. It's related only to the date after which the individual received notice of the completion of the investigation. And that's another factor that I think reflects why, perhaps, Congress decided that a short period of time is okay, because at that point in time, labor has looked at it, and they've determined either, like in this case, that he was on time and they weren't going to excuse it, or that perhaps it didn't fall within the, he wasn't, the individual maybe didn't meet the criteria under the BEOA or alleged violation of the statute and regulation related to veterans' preference, or that the department decided that the claim was without merit. The department could also have decided that they were unable to resolve it. But the fact that labor is done with it at the time when it issues a notice is another good reason why Congress showed, picked a reasonably short period of time to move on to the next level. Anything further on tolling before we shift to hearing? I do have a short question. It's, and it still is troubling to try and synthesize cases that obviously have gone in a variety of directions, including cases with as strong language or stronger than in no event. I just want to be sure I understand the government's position. Is it that those cases are wrong, or inept, or fact-dependent, or what? Or that at least in this case, as a matter of policy, the in no event should be rigorously and strictly construed, no matter how easy it might be to rationalize that there is room in the judicial mind for, let's say, an exercise of justice or fairness in a particular case. You're not leaving room for that in this statute, right? It's not my choice to have been made. We're saying that Congress left no room in this statute. So that when the Supreme Court or other courts have stepped in and said, nonetheless, we find that there is tolling available, do you see that as a judicial departing from the intent of Congress, let's say, in the interest of justice? No, certainly not. What the courts are trying to do in construing the Irwin presumption, the Brockham factors, and all of the cases that have considered tolling is to construe the statute and determine the intent of Congress. And that's all they're trying to do. And they look to the various guidelines and tools and suggestions that have come out through the cases that say whether this looks more like the kind of statute where Congress intended it to be tolled or whether it looks more like the kind of statute where Congress intended not to allow tolling. And that's the decision. This looks more like a Title VII case where tolling has been permitted liberally than a tax case or a securities case, doesn't it? It is a remedial statute. There's no question about that. But as I mentioned before, in the Fishville case, the Supreme Court has been willing to look carefully at the statutory language and structure to determine whether the liberal construction of veterans' provisions in general or remedial statutes in particular can be tolled. Judge Plager? Mr. Speaker, you've been very helpful in helping me understand the government's case. Just a couple of more things before we go on to the other issue. In part, it involves the position of the board, and perhaps you could help me understand that as well. If a complainant, a veteran, files within the 60-day requirement from the time of the offense, the alleged offense anyway, then goes through the DOL process and then presumably within the 15 days after he gets notice of the outcome, goes to the board, everything's fine. Let's assume for the moment that he files with the DOL on the 61st day or 62nd day after the offense has occurred. I read your brief to say that you probably think that that 60-day is waivable by DOL, and I think that makes some sense. Let's assume that the DOL waives the 60-day rule and says, OK, fine, you filed on time, or your filing is timely. They now go through the process with DOL, and the DOL says, well, we haven't been able to resolve this, we're sorry. Within 15 days after that, he files with the board. If I understand the board, the board seems to be saying, oops, sorry, even that won't work. Do I misunderstand the board? Correct, and our brief might not have been as clear on this point as I would have liked it if I wrote it. It's clear the board is saying, if you haven't filed with DOL at all, you're dead meat. Correct. OK, and I think we probably all agree with that, but I don't understand your position or the board's position, if you file late but you get forgiven by the DOL. And the board has said in the Waddell case, which is cited in the Williams case, and I think they both cited in our brief, that was a case where Mr. Waddell was untimely at DOL. DOL didn't address it, I think, one way or the other, but DOL addressed his VEOA claim on the merits, and he came timely to the board, and the board said, that's exhaustion. In fact, the board said, and I apologize, I didn't really understand this totally myself when I wrote the brief, the board actually said that timely, consistent with Zipes and other cases, that timely exhaustion at the DOL is not a jurisdictional prerequisite to the board having jurisdiction, but only if DOL has waived the time limit and addressed the merits. And the board interprets it as where the board, where labor dismisses something, as it did here, is untimely, that that is not exhaustion, and the board does not have jurisdiction. If the board fails to exercise its waiver, its coaling, and the veteran thinks that is arbitrary and capricious, whatever, is there no remedy? We don't think the board has any. I don't mean the board, I mean DOL. If the secretary, DOL, secretary of labor says, we're not interested in playing waiver, and let's assume that the law in fact permits the coaling, but the secretary says, I'm not going to coal. And the veteran says, well, that's arbitrary and capricious, and contrary to law, is there no remedy that the veteran would have? There's no remedy at the MSPB, that's correct. And the board's analysis is consistent with this court's off-stated rule of law with respect to the board, that the board only has the authority expressly granted by statute. And the board looked carefully in the Waddell and Williams case, as well as in the Bagonist case, they looked carefully at the VEOA provision and found nothing in it to address waiver of either time limit, particularly not the board's ability to review, much less reject the board's. Ms. Bleeker, your time is almost expired. I'd like to hear why you believe Mr. Kerkendall isn't entitled to a hearing on the 7701. Thank you, Your Honor. Yes, because under Title 38, 4324, which is the jurisdictional granting provision, there is nothing in that section, in that provision, that states that a person who files a USERRA claim may appeal pursuant to or under Section 7701. Isn't 7701 an umbrella provision? It's an umbrella provision with respect to an appeal from an action that is appealable to the board. Appealable under any law, rule, or regulation. That's not covered in USERRA? But it's not just, the word appeal, and the board has made the distinction between an appeal and a USERRA complaint based on the language, but it's also, 7701 applies to the action that's being appealed, and it's the action that's subject to appeal. And in a case like this under USERRA, where it's the decision or the action that's being challenged is a failure to hire, that's not an action that's otherwise appealable to the board, so 7701 does not apply. 1208 says an appeal is a request for review of an agency action and includes a complaint or action. And 1208.3 specifically says that the provisions of Part 1201 in general appellate jurisdiction provisions apply except as expressly provided in this part. And one of the express parts of the board's 1208 regulations is .13, the discretionary hearing. This sounds like a maze for rats that you have to work all these provisions in together. Well, but the express USERRA, unique USERRA provisions are really pretty short. And there are counterparts, so the board has a hearing provision under 1201.24 that talks about the statutory right to a hearing under 7701, but then it has the contrary provision in .13 that clearly applies only to USERRA cases. Judge Croce. Did I understand you to say that this is not an action, that there's no action involved in a USERRA case? It's not an action that's otherwise appealable to the board. Yes, of course there is an agency decision or failure to make a decision, I don't really want to characterize it. Of course there is a decision, but the failure to hire is not an action that's appealable to the board. Just referring to page 45 of your brief where you're talking about potential burden shifting here if you apply it under 7701, you do have a quote from the Sheehan case that says under USERRA the claimant bears the burden of showing the preponderance of evidence the employee's military service was a substantial and motivating factor in the adverse employment action. So that suggested to me that they did view, in the context of USERRA, an adverse employment action. Unless I'm misreading, I mean, this is your quote from the Sheehan case that you included in your brief. Do you think that's inconsistent with what you said or is there a way to reconcile that? Well, in the Sheehan case, this court was addressing the shifting burdens of proof under 4324. It was not addressing specifically the actions. So I agree in that quote. It could be interpreted as a finding that a USERRA complaint is an adverse action under 7701, but it obviously is an adverse action as defined under Chapter 75. And a comparison of 4324 and 7701 provides further support that these are different. For instance, in 4324, Congress did not use the word appeal. They talked about a USERRA complaint. And they did make a special point that the individual, the person who is filing a complaint with the board, may be represented by a counselor, may be represented in accordance with the rules of the board. Well, that's also in 7701A. So maybe this was just a redundancy that in 7701A it expressly provides you can be represented and it expressly provides that the board sets the rules to cover its procedures. But interestingly, what's different is under 4324, it did not also incorporate the provision in 7701A that says you have the right to a hearing. So that's a difference that should be given some weight. Well, it says a person who seeks a hearing may be represented by counsel and so forth. What's the implication of that? They're allowed to do a hearing. If they seek it, they should have it. Seeks a hearing or adjudication. Or adjudication. Well, whatever you want to call it. But it says hearing, and it says you can have a lawyer and so forth. You mentioned that a minute ago. What could it mean other than that they are entitled to a hearing? They're entitled to seek a hearing, and the board has given its administrative judges discretion under very limited circumstances under when not to hold a hearing. Is a hearing held every time there's a genuine issue of material fact? Is that the difference? General issue of material fact or credibility, an issue of credibility. So it's a difference. 7701 gives an automatic hearing without regard to whether it's a fact issue. But in USERRA cases, you require that there be a fact issue or credibility issue. Well, does it make sense that Congress intended that people who misbehave or are suspended or demoted or fired or whatever are entitled to a hearing? And someone who is trying to vindicate an entitlement to a veteran right is not? Does that make any sense? Does that sound like what Congress would logically do? The appellate proceedings under 7701 are part of the whole due process rights that are granted to someone when an adverse action or a personnel action or whatever is taken, and they're expressly provided. In fact, the board can overturn agency adverse action based on procedural irregularities and not even having to look at the merits. Whereas in the USERRA complaint, they only are addressing the merits. So it's a difference in the statute and the intent behind the statute. Why would the board's own regulations, though, identify them as appeals, USERRA appeals? As the board has explained it both in its case law and when it promulgated the new Part 1208, they're applying some but not all of the appellate procedures. Now, I might be able to argue that USERRA v. EOA and IRA appeals would fit better. They're more like an original jurisdiction case. But, again, I don't get to say that. It's the board's authority to determine how to designate the various matters that can be brought before it, and the board chose to apply some of its appellate regulations and then generally consider this to be within the appellate provisions, but to provide those certain provisions or to provide express distinct provisions under USERRA that are consistent with the statutory provisions. So you think they made a mistake by calling them appeals? No, I don't think they made a mistake. I think they knew what they were doing. They were trying to generally call it appellate, but it certainly would be clearer if they had said these are hybrid actions or something like that. But they clearly did say that the appellate procedures provide except as otherwise expressly provided in the statute. And under 1201.3, they say the appellate, those proceedings apply unless other specific provisions are made in Part 208. So they did signal that there are these differences and there are exceptions. Judge Moore. Tell me, what is the standard that we are reviewing the board's interpretation of its own regulation under? This is not de novo, right? Correct. This is Chevron deference. We're interpreting a regulation, not a statute. So isn't it Seminole Rock deference, not Chevron deference actually? Well, it's a regulation that the Congress specifically authorized the board to promulgate and 4324, as I've been trying to articulate, does not specifically address the matter or is silent on the matter, so under Chevron and Meade, the court can presume that Congress explicitly left a gap for the agency to fill. Okay, so we would have to give deference to the board's interpretation unless it's plainly erroneous or inconsistent with the regulations. That's the Seminole Rock. Erroneous or inconsistent with the statute. Well, under Chevron, but under Seminole Rock, if we're interpreting a regulation, that would be the standard. But here's my question. Couldn't we interpret the provision in 1208.13 instead of saying it's discretionary whether to grant a hearing, but to say it's discretionary whether to grant a hearing if the appellant, basically the appellant must request a hearing, and as long as the appellant requests a hearing, then it's not discretionary, but if the appellant does not request a hearing, because the board is certainly free to establish procedures on its own, so Congress says you have to give a hearing in every case, and it seems like it would be fair, wouldn't it, for the board to say you have to request a hearing in order to get one? Short answer. Well, that's certainly how the board has interpreted 7701 and the mandatory requirement for appeals under 7701, but we submit that that's not what 4324 provides. Thank you. We've given you extra time and asked lots of questions. We'll hear now from Mr. Dupree on rebuttal. You're entitled to approximately five and a half minutes if you need it all. Thank you, Chief Judge Michel. Let me straightaway address the question that had been raised by a number of members of the court concerning whether Bailey v. Glover is properly regarded as a statute involving accrual or involving equitable tolling. Our position is that it involves equitable tolling. The basis for that is the Supreme Court's decision in the Lampf case where at 501 U.S. 363, they quote extensively from Bailey v. Glover for the standard for equitable tolling. So the United States Supreme Court has recently, as Lampf, construed Bailey v. Glover as a case involving equitable tolling. Second point, I think it is very important here to keep in mind with regard to the question about administrative burden. The administrative burden here is minimal to nothing. I think the clearest evidence of this is the Board's amicus brief. On page 1, they say the Board's only interest in this case concerns the USERRA hearing issue. So the Board in its public filing has asserted and conceded that it does not have an interest in the VEOA issue. And certainly if they were concerned about the torrent of untimely filings, they would have at least explained their position or said they had an interest. They expressly declined to do so. Third point, a number of the statutes that we have been discussing in terms of whether or not they are susceptible to equitable tolling predated 1990, which is very significant because, of course, that was the year in which the Supreme Court established the Erwin presumption. The VEOA is a post-Erwin statute. I think it is eminently fair and reasonable to hold Congress to having legislated in light of that presumption. The Supreme Court said so explicitly in the Young decision. Fourth point, there were some questions raised about whether or not the 15-day limit should be viewed as different because it concerns a time-of-review statute. I think that misses the point slightly in that, as Ms. Bleeker explained, in a board review, quote-unquote, what they are reviewing is not the Department of Labor's decision. Rather, they are reviewing the action by the agency itself. I think that fact is very telling because it shows that the procedure at issue in this case is different in kind than the normal appeal where a litigant, for example, goes from a federal district court to an Article III court of appeals. The court of appeals is reviewing the district court's decision. That's not what we have here. This situation, in sharp contrast, is far more analogous to the Title VII situation where the statute first directs a petitioner to seek relief from the EEOC. If that doesn't work, then they can proceed into court and have a different tribunal hear their claim. With regard to some of the USERRA points, I think Judge Moore's question was very well taken. I would direct this court to the filing that we lodged with this court. It was the order from the administrative judge in this case that was sent to my client where he said right up front, if your USERRA appeal is timely filed within the board's jurisdiction, you have the right to a hearing on the merits of your case. That was in an order issued by the ALJ in this case. I think this shows at a minimum that, as a number of judges here have noted, these regulations are a mess. The ALJ, at least initially, viewed Mr. Kirkendall as having a right to a hearing. The plain language of the board's own regulations established that he has a right to a hearing. What about the burden of proof? Doesn't the burden of proof under 7701 also fall on the government if there's an automatic right to a hearing? I believe it does, Judge. So the government has the burden to disprove his claim. Certainly, that is the ordinary way that appeals proceed under 7701. I realize that in the Sheehan case, this court established the McDonnell-Douglas burden-shifting framework as applicable to USERRA claims. I would note, though, that in Sheehan, the panel expressly noted right up front that the board's regulations were in considerable tension with its actual practice. So I think the Sheehan court's opinion, again, was predicated on the notion that the board may not quite be acting in accordance with its regulations. So we'd have to overrule that case? I don't know necessarily if you have to overrule it. I think, certainly, if appeals are proceeding under 7701, I agree with you, Judge, that there would be, at least certainly the presumption, that the burden would then shift to the government, at least initially. Whether or not somehow there could be a burden-shifting framework imported into that, I think that would be a question for another day. But again, Sheehan forecast, I think, this exact situation where it noted the tension. I think the final point I would make is, as I think it was Judge Brewer... Counsel, the government could get out of this situation by clearly listing its regulations. It could just say, these are complaints, not appeals. And as such, since we have the power under the statute to prescribe specific rules, we say appeals are discretionary. I'm sorry, hearings are discretionary. That's exactly right, Judge Brewer. And subject to the notion, at least our threshold position, is that this could be resolved purely by reference to the statute. But if the court were to disagree with that, say it's a matter open to interpretation, then yes, that's exactly what the agency could and should do here. I think with regard to the point about 7701 being an umbrella provision, that's exactly right. 7701 is written in sweepingly broad language, the language of any rule, any law, any regulation. Congress clearly anticipated that a variety of claimants would be given hearings before the board, as they are today. This is not a massive expansion of the hearing right. It is a very narrow expansion in the sense that it would bring new Sarah claimants into the right of the hearing and give them the same hearing rights that all other accounts before the board are entitled to. Thank you, counsel. Before adjourning, I want to, on behalf of the court, thank Mr. Dupre and his colleagues, Henry C. Whitaker and Theodore B. Olson, all of whom have undertaken on a pro bono basis to represent this wholly disabled veteran, Johnny Kurgendahl. The court is also indebted to the efforts of Catherine A. Bleeker, an assistant director in the civil division's commercial litigation branch. We don't so often have assistant directors or directors writing the briefs and delivering arguments. We appreciate that. There were also two amicus briefs to assist the work of the court. One was mentioned earlier that was filed on behalf of the Merit System Protection Board by a general counsel office. Finally, the amicus brief was also filed by Edward Reines and various colleagues on behalf of the veterans' groups and also the petitioners' case. We're grateful to all those counsels. Mr. Walker. All rise.